All right. Do you wish to reserve time? Yes. I'd like to reserve three minutes, please. All right. Thank you. You may proceed. May it please the Court, my name is Erin Maloney. I represent the appellant, Hyland Green's Homeowners Association of Winnipark. Bankruptcy court was required to apply state law in determining the validity and the effect of the lien, and it's the association's position that the court did not properly apply state law. Let me stop you right from the beginning to get our ducks in a row here. Sure. There's several different pieces to this, right? Yes. The font of all this is contractual, right? I'm going to live in this, whatever it is, development, okay? I'm going to pay X. Yes. If I don't, the following things happen. Yes. Right? You have the following rights, right? Yes. So we begin with the CC&R, right? That's the most fundamental piece of all this? Or not? It's twofold. It's CC&Rs and the Davis-Sterling X. I understand. Yes. But, I mean, you wouldn't get to the Davis-Sterling Act if you didn't have the CC&Rs, right? That is correct. So we begin with that, and then we utilize the Davis-Sterling Act to figure out, you know, how we're going to implement these rights and enforce these rights, correct? The Davis-Sterling Act controls, in most situations, over the declaration, but yes. Over the declaration? The CC&Rs. The Davis-Sterling Act, in most cases, says notwithstanding what CC&Rs say, this is how you do things, especially in regard to liens. Okay. Does it say the language of the CC&Rs is irrelevant as to whether it allows for continuing liens? It doesn't say it's irrelevant in those words, no. Okay. All right. And then from there we get to judicial interpretations of what this all means, right? Yes. Okay, thanks. Yes. Well, and to pick that up, I'm sure we're going to hear about Bear Creek in a moment. Yes. And Bear Creek thought the CC&Rs were pretty important as well, correct? Bear Creek looked to public policy more than to the CC&Rs. After it went through the CC&Rs. It did point out what the CC&Rs said, but then went on to declare public policy arguments and established that public policy as to create continuing liens. So it's neither contractual nor is it really interpreting a statute, right? It's just saying the world would be better if this were true. It interpreted, at that time, Civil Code Section 1367, which is now the new Davis-Sterling Act, renumbered. It's 5675. Just to make everything difficult. Exactly. The renumbering of the statute was difficult for all of us who practice at home on this association field. So California law, as it applies to associations and liens, is two parts. We've got the statute which governs. That's the Davis-Sterling Act. The Davis-Sterling Act has three different places where it implies that there are continuing liens. Well, it implies, but it doesn't say it. The word continuing lien does not appear in either the CC&Rs or the Davis-Sterling Act. Can I ask you a question about, because, again, I think Bear Creek is what you're, in effect, saying when you say that's the law, as you're saying we have the fourth DCA or division, whatever. They've said it. No other court of appeal has said anything different. The Supreme Court hasn't said anything. So trial courts follow it. That's your? Yes. All right. Got that. So Bear Creek, though, isn't it procedurally far off the mark from where we are now? Because in Bear Creek, wasn't that a California state court in a foreclosure scenario deciding what the judgment would be that went to foreclosure? And here we're talking about liens arising after there is that final state court order. The lien arose when the assessment lien was recorded. That's when the lien arose. Right. I get that. Yes. And it then is, but we then get a judgment of foreclosure in the state court system. And, in effect, the state court is saying in Bear Creek you've got to pay all of this to avoid foreclosure. Correct? I'm simplifying it, but then this is very much so. Yes. So I get the continuing lien argument as a policy matter in that context because we've got a live foreclosure action that's ongoing. But here, isn't this a completely different procedural posture to the case because we've got a foreclosure judgment, for whatever reason your client didn't foreclose, and then we've got stuff that happens thereafter. They can still go but for bankruptcy and foreclose on that first lien. The reason that they didn't foreclose is the multiple bankruptcies. I get that. And I get that. That's the practical problem. But I'm saying, to say that that's the law, isn't it an overstatement? Because isn't that the law when we have a pending foreclosure action as opposed to that's the law in the policy? Maybe my brain's too fluid, but I think the policy considerations are totally different in the Bear Creek situation and here. I'm afraid I don't understand why there would be a difference because the order issued by the state court in its judgment for foreclosure is to foreclose the lien. Right. So the lien still exists. You cannot have an order to foreclose a lien if you take that lien away. And I'm asking bad questions, so I'm going to try and think. Again, you're exactly right. So you create a lien, big deal, you want to foreclose, you have to go through this judicial process, correct? You can do it judicially or non-judicially.  So they chose to do it judicially. Your client chose to do it judicially. There's a fine. Am I correct that the judgment lien in this case was as a result of court mandate? Had there been a court proceeding to liquidate the judgment? There's a judgment issued by the state court which includes both a money judgment and an order for foreclosure of the lien. Right. And so typically as a court, when we have a judicial determination of foreclosure, the court takes some ownership over the amount of the foreclosure. Yes. And that's what the judge did. And that's what Bear Creek did. The judge said this is the amount. Isn't it different where the court has, other than maybe accrual of interest on that, the court has no ownership. The court doesn't know what's happening. The court is, hasn't that lien merged with the judgment at that point in time? The judgment set forth the amounts that were due on the date that the judgment was entered. So foreclosure of the lien is this amount as of this day. That included amounts which accrued after the lien was recorded. That continuing lien. Before the judgment. At the time of judgment. We've got the period between when the lien was recorded and when the judgment was issued. And the amounts that accrued before the lien was recorded and after the lien was recorded. So the judgment necessarily implied that the lien was continuing lien because the lien now secures this amount on this day. Not the amount that was stated in the lien originally. But did it necessarily, but you're then I think taking the leap and saying it also includes amounts after the date of the judgment. I have conceded all along that the judgment is a static date. Because the court can't issue a writ including post-judgment amounts. So the judgment is only as of that date. The lien, however, the assessment lien, not the judicial lien, the assessment lien is continuing and it secures the entire debt. The amounts that accrued before the lien was recorded. The amounts that accrued up until the date of judgment. The amounts that accrued up until the date of the bankruptcy filing. The amounts that have accrued until today. I get that's your argument. But did Bear Creek necessarily decide that? Yes. It definitely decided that. Necessarily decided. Yes. But actually that was not the issue before the Bear Creek court. It was the argument that was presented by Mr. Edwards to the court of appeal and it is the question that they answered. I was there. No, unfortunately reading the opinion I don't see that and factually it seems distinguishable. Let me get to the right page here, Your Honor. Because why would the court need to decide that the lien continued after the date of its judgment? Mr. Edwards argued that the lien only secured the amount up until the date that the lien was recorded. I understand that. The Bear Creek case said no, the lien also includes amounts up until the judgment is entered. But that's a different question. It's not a different question. Because if a lien only includes, in this case, $990. No, I'll tell you why it's a different question. I think, and I think Judge Taylor, I think I'm on the same page with her. It's one thing to say in the course of a judicial proceeding that the judge is going to do something that's going to liquidate a debt. Okay? Everybody's there. Everybody has notice. You show up. You hear what's going on. You make your arguments. Okay? That's one issue. To say the lien continues thereafter is problematic from the CC&Rs, which we'll talk about in a minute or two, and it's problematic from all the notice protections that other cases have told us are very important, not to the homeowners association, but to the homeowner. And that's where I think there's a big difference between pre- and post-judgment. I'm not sure I'm entirely with you even on the pre-judgment point, but I think you've got a better argument there than you do on the post-judgment part. And Bear Creek, if Bear Creek wants to say the world would be better if X, Y, and Z were true, they're free to say it. It's not a holding. It's a, you know, it's an aspiration in my view. So I think that I have the same problem with Bear Creek that I, you know, they might have said that. I don't see how it followed from what they were doing. And there's a big difference between concluding a judicial proceeding and having a continuing lien. Those are, in my mind, just very different, very different questions. With all due respect, Your Honor. Can I say in my humble opinion that we're both lying? That's Judge Montali's old line about that. With all due respect, Your Honor, you can't say that it's continuing only up until the date of judgment, but it doesn't continue thereafter. Why not? Because the very nature of the lien is that it continues. Statutes specifically say, we've got three statutes that say that associations get to recover their collection costs. That's a different question. That is not the same thing. Collection costs are not a continuing lien. It's a part of the lien that is ongoing. But it is not the same piece that you're talking about here. Okay. Let's look at Civil Code Section 5680 that says a lien that's created pursuant to 5675 shall be prior to all other liens recorded subsequent. If you take away the priority of the lien by merging it with the abstract of judgment, it's no longer given the priority of that initial lien. But you're just assuming that it's all the same thing, which is not we're not with you on that yet. So you're under your three minutes. Do you want to keep going? I'd like to just finish this total of thoughts. Thank you. The other thing that I'd like to point you to is Civil Code Section 5720 says that the association may not foreclose until the debt that is secured by the lien reaches a certain amount. It contemplates that that debt continues to accrue after the lien is recorded and is included in the lien. When you get to the judgment stage, you've included amounts beyond the date that the initial lien stated. And so you can't just say, okay, the lien is going to secure up to this amount, but then suddenly it stops. It's a continuing lien. It's an assessment lien. It would be absurd to say that an association loses its priority and loses the nature of the security interest itself by enforcing it. And yet two federal judges have said that's exactly the right answer, and you can answer that when you come back. Thank you. Okay. Monáe? Good morning, Your Honor. Your Honors, may it please the Court, I'm Charity Monáe, appearing for the debtor Maria Basave de Gullion. Your Honor, I think it's, I'd like to highlight something that just happened there on the record, the exchange with counsel. Counsel essentially tried to sidestep the Court's points, which I think are directed to the fact that the Bear Creek holding that counsel's relying on is essentially dicta. Yet in the reply brief of the association, the association argues that the case that I think actually resolves this entire matter, Diamond Heights Village Association v. Financial Freedom Senior Funding Corporation, that that holding, where the Superior Court of California said that an assessment lien merges into the judgment, that that holding was dicta. It's not dicta, and it's actually essential to that case. And that case actually, the association tried to get up to the California Supreme Court, and the California Supreme Court did not take that case up. So I think that is... So respond to the point, though, regarding the priority. I don't... If it merges, is it just a judicial lien that's then recorded? Or where does the priority begin, stop, or continue? I don't think that the association necessarily loses priority. I think that we have unusual facts in the sense that there's a judgment, and then we're seven years later, and the association hasn't done anything. But the association could have recorded a lis pendens if it's worried about priority, and then it also could immediately take that judgment when it's entered and do what actually happened here and record an abstract of judgment. There it's got a lien. And then it could actually also execute on that judgment for foreclosure and foreclose pretty quickly. I think Judgement Talley commented in his case where he addressed the Bear Creek case that also in that case the association hadn't acted diligently, and that's what occurred here. And I don't think there is a priority risk because a lis pendens is always available for a litigant. It's not a priority risk. I think it's more aptly a risk of, okay, we've got priority to $10,000, but now we're going to be behind something for our next $10,000. It's how do they preserve in a situation of continued noncompliance. I'm actually less worried about a bankruptcy because presumably people aren't jumping ahead of them because without court approval and they'd have the opportunity to be heard in the bankruptcy case. So is the real answer here the association, once it gets that judgment, needs to move? And is that good policy? I think it is. I think it's good policy. I mean, in the sense that usually you would have a situation where an association is only foreclosing on a substantial debt or substantial delinquency. And so all those interests are built into the Davis-Sterling Act. The policies stated by the legislature were to protect homeowners. So we don't want the association to be able to rush in and foreclose on a de minimis debt, but here I think it is good policy when they get to that point, they meet the statutory thresholds, that they can do it right away and protect the association's interest. So I think it's a balancing act, and I think it serves both sides of these disputes. So your point would be that in the statutory balance, once you hit the threshold, then the balance shifts to the association, the balance of the harms that they need to move because they're being harmed by effectively carrying the water for this non-Homeowners Association dues-paying resident. And I think they have a duty to do that. I mean, it's inuring to the benefit of my client in this case that they didn't, admittedly, but I think they also have a duty to their members that they actually collect the debts when they're due and take swift action when it's necessary. I don't know if the Court has any other questions. Well, you know, I think the thing that I'm ‑‑ one of the things I'm struggling with in this case is what is California law? Is Bear Creek as they ‑‑ they categorize Bear Creek as creating the law in California, and as a federal system we are free to disagree with that until the ‑‑ you know, we look at what would the California Supreme Court do, which gives us some ability to, in some circumstances, to say we don't care what a court of appeal does, but I'm very reluctant to do that. So why do I get to say Bear Creek doesn't establish the law in California, and why is it appropriate for me to take a different position? And why will it be appropriate for the Ninth Circuit to do it? I think that the Court pointed out the factual differences between our case and Bear Creek, and I think that the Court doesn't need to disregard Bear Creek and just look at the fact that in Bear Creek they were at the point of foreclosure. Here we're not dealing with a foreclosure scenario. We're dealing with many, many years past that of additional assessments and costs and attorney's fees and interest upon interest that the Association is claiming are bootstrapped into the assessment lane that dates back 10 years ago. So I think that the facts are different enough that this Court would certainly not be stepping on Bear Creek, and I also think that to the extent Bear Creek even held that such a continuing lane could exist in perpetuity, I think that would be dicta. So I don't think that the Court has an issue of running up against Bear Creek, and I think also another case that came down later, it's Diamond v. Superior Court. That's the case that Judge Blumenstyle, sorry, not Blumenstyle, Judge Gonzalez in the Warren case noted, says that these statutes are to be interpreted strictly, the noticing requirements, and all the noticing statutes in the Act refer to delinquent debts, collecting delinquent debts via a lien. So I think it's supported by the Act. I think it's supported by the cases that have come since. None have followed Bear Creek and applied the interpretation that the Association is arguing today, and I think that ‑‑ Can I come back to the CCRs for a minute or two? Yes, please. They were a little different in Bear Creek, and counsel for the appellant will tell me that's not really the point because somehow the Davis-Sterling Act controls no matter what they say, and we'll talk about that in a minute or two. But that was of some high importance to the two federal judges who looked at this and tried to make sense of this and said, look, the font of all of this is contractual. And, you know, it's a contract problem and it's a notice problem. And so the two federal, you know, Judge Montally and Judge Gonzalez-Rogers who looked at this said, look, the CCRs here just don't give you the same right on a contractual basis to have this continuing lien. You know, the language is never easily read because people are all specialists and, you know, we're not, so we're trying to make sense of that. But the language that those two judges looked at looks a lot closer to what we have here that doesn't obviously countenance a continuing lien. So what's, I mean, do you think that's the most significant point of departure here, or how do you rank that? You know, Your Honor, I'm certainly no specialist on the CCNR language, but this argument has been made by the association in this case that the CCNRs provide a source for this continuing lien. But they're not the real source. I haven't found that language anywhere in the CCNRs. It hasn't been specifically cited by the association. So I do think that's a significant difference as well because Judge Montally certainly thought that those CCNRs that did provide for a continuing lien for prior delinquencies and subsequent delinquencies, you know, would be secured. So I think that is the difference, but I think we don't have those. As a philosophy matter, where should we start? I mean, is this contractual, or is it something else? Well, I think to the extent that Bear Creek said, not in dicta, that you can have a continuing lien forever without notice of all the potential accruals, I think it's wrong. But if it's contractual, you know, I don't think so because I think, as Ms. Maloney noted, the Davis-Sterling Act prevails over what the CCNRs say. So if they're in conflict, then the Davis-Sterling Act is what has to be followed and strict notice to homeowners of what they owe, what's delinquent, and oh, by the way, we're going to foreclose. That's what the Act provides, not some continuing lien. Well, I mean, it doesn't create the lien is the point in your view, right? The statute doesn't create the lien. It tells you how to enforce it and how to do some calculations. Right. But just the font of all this is I'll give you a lien. Right. Right. That's your point. Yeah, and fundamentally, of course, you're right, Your Honor, that you have to start with a common interest development for the Act to apply. Okay. But then you look at how do these match up, and if they are in conflict, then the Act prevails. And I think it prevails in this case. But I also don't think that we have the language that existed in Bear Creek either. Okay. That's all I have to say. Thank you very much. All right. Thank you. Thank you. Thank you. The CC&Rs for this association aren't as detailed as those in the Bear Creek Association, admittedly. Yeah. But the CC&Rs do tell us to look to the Civil Code in enforcing the lien. And then we look at Civil Code Section 5675B that says, the debt shall be a lien on the owner's separate interest in the common interest development from and after the time the association causes to be recorded a notice of delinquent assessment. Shall be a lien from and after. That is an ongoing, continuing lien. The Diamond Heights case had some strange facts and created some strange law. And what, if we were to take that ruling and apply it in everyday situations, the result would be absurd. Well, it would be inconvenient. It would be absurd. Let me explain why. But let me say, isn't that the only decision on that point? I mean, for the same reason you're telling me Bear Creek is the law, isn't Diamond Heights the law? Is there an intervening court of appeal decision that says something different than what Diamond Heights says? No, Your Honor. There isn't. I'm trying to tell you that we need to disregard Diamond Heights because it's wrong and it's distinguishable. So we disregard Diamond Heights, but heaven forbid that we disregard Bear Creek. Yes. Okay. All right. That's what I'm getting at. Have at it. Let me explain why Diamond Heights would create an absurd result. There's several reasons. One is that it eliminates the lien priority that we already discussed. It would make a security interest into a judicial lien. As we know, a judicial lien is avoidable in a bankruptcy, whereas a security interest against the principal residence is not avoidable under 522F. So it's changing the very nature of the lien. By that very logic, the fact that the Davis-Sterling Act says something about a lien, you're asking me to disregard that? No. No, you ought to be in the following sense, that the origin of the lien is the contract. Right? That's a security interest. The security interest is the notice of delinquent assessments. Oh, wait a minute. No, it isn't. I mean, the security interest is something that's contractual between two parties. Right? Okay. Yes. All right. So the lien, I mean, the statute talks about a lien, which is fine. But what you basically just told me is to disregard that because that would be a judicial lien. Well. So now I'm really confused. You've got the CCMRs creating a security interest. Right. You've got the notice of delinquent assessments, which is recorded, it's a statutory lien. Okay. But neither of those is a judicial lien. Okay. A judicial lien would be avoidable. Okay. But neither a security interest nor a statutory lien is avoidable under 522. I mean, I come back to the same problem. If the font of all this isn't what the parties agreed, then, you know, we're talking about a very different problem. The CCMRs refer to the Davis-Sterling Act. Okay. That's what the parties agreed, that it would be enforced under the Davis-Sterling Act. Okay. So we do look to the CCMRs that tell us to look to the Davis-Sterling Act, and that's what the Davis-Sterling Act tells us. That you're not going to you can't substitute one type of an avoidable lien for what the association would have had under the Davis-Sterling Act. It would be an absurd result. All right. Well, you're out of time. Let me see. We've peppered you with questions. Does anybody have a question that they need answered? No. This is a tough issue. It's an interesting issue. Oh, wait. Statutory liens are avoidable, too, under bankruptcy, right? Not under 522-F, just judicial liens. But under a different section. Okay. 506-P. All right. Thank you very much for your good argument. This will be under submission. Thank you. All right.
judges: Taylor, Lafferty, Spraker